COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, Friedman and Callins
Argued by videoconference

UNPUBLISHED

JOEY EDWARD EANES

v.      Record No. 0670-21-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION BY*
JUDGE FRANK K. FRIEDMAN
MAY 17, 2022

FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

Michael A. Nicholas (Daniel, Medley & Kirby, P.C., on brief), for
appellant. Appellant submitting on brief.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Joey Edward Eanes (appellant) appeals his convictions, following a bench trial, for

possession of methamphetamine with intent to distribute, in violation of Code § 18.2-248, and

possession of oxycodone, possession of hydromorphone, and possession of buprenorphine and

naloxone, in violation of Code § 18.2-250.[1] Appellant argues that insufficient evidence supports

his convictions. We affirm.

BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court." *Yerling v. Commonwealth*, 71 Va. App. 527, 530 (2020)

(quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)). This standard requires us to

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant does not challenge his convictions for eluding police, driving with a
suspended license, third or subsequent offense, and dumping trash on a highway.

"discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

On September 16, 2020, Henry County Sheriff's Deputy Evan Monroe noticed a blue Mitsubishi Eclipse while on patrol. Monroe previously had stopped the same vehicle and determined it had improper tags; he checked the tags on this occasion as well and determined that they were still improper. Monroe turned on his lights and attempted to stop the vehicle, but it accelerated away. Monroe then activated his siren and pursued. Sheriff's Deputy John Tatum similarly gave chase behind Monroe. The dashboard camera on Monroe's patrol car captured the pursuit, and the Commonwealth entered that footage into evidence.

Monroe testified that he saw the Mitsubishi's driver throw two black objects out of the vehicle, one from the driver's side and one from the passenger's side. According to Monroe, the objects each looked like a sunglass case or small box and landed on opposite sides of the road. Tatum testified that he saw one black item thrown from the driver's side during the pursuit but could not determine its size or shape. The dashboard camera video appears to show an item thrown from the passenger's side and another item thrown from the driver's side. The shape and color of those items is difficult to determine from the video.

The car ultimately stopped at a residence. Appellant was the driver and sole occupant of the vehicle. Monroe arrested appellant and searched him incident to arrest, finding $1,028 on his person. Appellant stated that he fled because he was afraid to go to jail, that he threw a drink cup out of the vehicle but did not throw any other objects, and that he carried the money because he did not like putting it in a bank. Monroe testified that he remembered seeing a styrofoam drink cup in the driveway as he was arresting appellant.

Monroe directed Tatum to the location where Monroe saw the objects land. Tatum returned to that location approximately five to ten minutes after the pursuit ended. He found a black soft-sided case on the driver's side of the road and a black hard-sided case a few hundred yards away on the passenger's side of the road. He also found small baggies strewn along the road in between the two cases. Some baggies were empty and unused while others contained various substances. Photographs of the various roadside baggies were taken and later entered into evidence. Without objection, the Commonwealth submitted a certificate of analysis showing that the containers Tatum recovered from the side of the road held 7.79 grams of methamphetamine; marijuana, oxycodone, hydromorphone, buprenorphine, and naloxone.

Darrell Foley, an investigator with the Vice Division of the Henry County Sheriff's Office, testified that one gram of methamphetamine would typically constitute personal use and that 7.79 grams of methamphetamine would provide a regular user with at least several days of use. Foley opined that, based on the quantity of drugs, the amount of money found on appellant, and the unused, new baggies found, the evidence was consistent with drug distribution and not personal use.

The Commonwealth submitted recordings of several jail telephone calls appellant made while awaiting trial. On those calls, appellant told a woman that she needed to tell appellant's lawyer that appellant used baggies to store jewelry and that a second person needed to come to court to testify to that effect.

At trial, appellant moved to strike the Commonwealth's evidence, arguing that the Commonwealth failed to prove that the items found near the road came from his vehicle.

The trial court denied the motion. Appellant testified that he threw a drink cup out of his car when he pulled into his driveway but did not throw any other items out of his vehicle. He testified that he was afraid that Monroe would beat him up—so he fled to a place where he knew

there would be witnesses and cameras. Regarding the jail calls, he testified that he was attempting to start a consignment jewelry store and packaged the jewelry in small baggies for sale. Finally, he testified that the money recovered from his person was social security income.

Appellant renewed his motion to strike at the end of all the evidence and argued in closing that the items found by the road did not come from appellant's vehicle. The trial court found appellant guilty on each charge. This appeal followed.

## ANALYSIS

### Standard of Review

Appellant challenges the sufficiency of the evidence underlying his convictions. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Yoder v. Commonwealth*, 298 Va. 180, 181-82 (2019) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Pijor*, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

An appellate court gives deference to the trial court's interpretation of all of the evidence, including video evidence—even though we are able to observe the video on equal footing with the trial court.

> Such deference stems not from the trial court being in a superior position to view the video evidence but from the difference in our respective roles. As factfinder, a trial court views video and other evidence to determine what it believes happened; we, on appellate review, view video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the trial court did.

*Meade v. Commonwealth*, ___ Va. App. ___, ___ (May 17, 2022) (this day decided).

<u>The Fact-Finder's Verdict was Supported By Ample Evidence.</u>

To convict a defendant of illegal possession of an illicit drug, the Commonwealth must prove either actual or constructive possession by the defendant. *Morris v. Commonwealth*, 51 Va. App. 459, 465 (2008). Appellant asserts that there was insufficient evidence to conclude that appellant ever possessed the drugs found by the side of the road. The record does not support appellant's contention.

Two deputies testified that they saw appellant throw items from his vehicle during the pursuit. The dashboard camera footage appears to corroborate the deputies' testimony.[2] One deputy returned to those locations just minutes later and found two containers and packages of drugs strewn along the roadside. Photographs that were introduced into evidence reveal that the various items appeared to be clean, as though they had not been discarded on the roadside for long, and they were clustered together in the general area where the officers saw appellant

---

[2] This pursuit occurred at night, and it is difficult to discern exactly what was thrown out of the car from the dashboard video. It is clear, however, that objects were tossed from the driver's side and then from the passenger's window during the pursuit. Again, we view the video not to pronounce exactly what happened, "but for the limited purpose of determining whether any rational factfinder could have viewed it as the trial court did." *Meade*, ___ Va. App. at ___. Here, the video confirms the deputies' accounts that items were thrown from the car during the pursuit and undercuts appellant's credibility in claiming to the contrary.

tossing items from his car. A reasonable fact-finder could infer from this evidence that appellant threw the drugs from his vehicle while fleeing law enforcement.

Appellant's testimony regarding the incident plainly conflicts with the officers' accounts, but this does not mean—as appellant asserts—that the Commonwealth failed to meet its burden of proving the offenses. "Merely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [fact-finder] to decide." *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017) (first alteration in original) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). "Determining the credibility of witnesses . . . is within the exclusive province of the [fact-finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

"When 'credibility issues have been resolved by the [fact-finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)). Furthermore, when a factual record "supports conflicting inferences," the appellate court must presume that these conflicts were resolved in favor of the prevailing party below and "must defer to that resolution." *Wright v. West*, 505 U.S. 277, 296-97 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)).

Appellant testified that he did not throw any drugs from his car.  The trial court was permitted to believe or disbelieve appellant's testimony, and it chose not to believe it.  We cannot disturb the fact-finder's conclusion unless it is plainly wrong.  *See Flanagan*, 58 Va. App. at 702.  In this instance the court's finding was fully supported by the record.[3]

## CONCLUSION

The trial court's judgment was not plainly wrong or without evidence to support it.  Accordingly, we affirm appellant's convictions.

*Affirmed.*

---

[3] We need not delve into appellant's explanation regarding the jail calls involving his connection to the roadside baggies because, in our view, sufficient evidence supports appellant's convictions regardless.  Again, however, taking the evidence in the best light to the prosecution, the trier of fact was free to reject appellant's claim that his involvement with the baggies was tied to a consignment jewelry business.